In re KOBRE et al.

(Circuit Court of Appeals, Second Circuit. March 9, 1915.)

Nos. 200–202.

BANKRUPTCY ☞69—PARTNERSHIPS—DETERMINATION OF MEMBERSHIP.
    Various orders made in bankruptcy proceedings against related part-
    nerships, determining who were members of such partnerships, considered
    and affirmed.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 51–53, 56;
    Dec. Dig. ☞69.]

Petitions to Revise and Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of Max Kobre and Moses Ginsberg, individually and as copartners doing business as Max Kobre's Bank, 1783 Pitkin avenue (Brownsville), Brooklyn, alleged bankrupts; also, Max Kobre and Sarah Kobre, partners, doing business as Max Kobre's Bank, Williamsburg and Manhattan, alleged bankrupts, and Max Kobre and Sarah Kobre, alleged bankrupts. On appeals and petitions to revise by Bessie Weinstein, petitioning creditor, to review certain orders. Affirmed.

See, also, 224 Fed. 106.

Three banking institutions were conducted in New York City under the name of "Max Kobre's Bank." The parent bank was on Canal street, Manhattan, with two branches in Brooklyn—one at Williamsburg and the other at Brownsville. Each was conducted as a separate institution, although the banks at Canal street and Williamsburg were clearly under the same ownership, which at least up to the spring of 1914 was that of Max Kobre and Sarah Kobre, his wife, as partners. The Brownsville Bank was established in 1906, with Moses Ginsberg as manager. It had no independent capital, but conducted business on its deposits and its connection with the Canal Street Bank. In 1914, a petition in bankruptcy was filed in the Southern District of New York, against Max Kobre and Sarah Kobre as partners and as individuals. Two petitions were also filed in the Eastern district—one against Max Kobre and Moses Ginsberg as partners in the Brownsville Bank, and one against the same defendants as general partners in all the banks. In the first proceeding it was shown that Ginsberg had been in sole charge and the active manager of the Brownsville bank since it was established, subject perhaps to a general supervision by Max Kobre; that, while he was known to the public as manager only, he had received an increasing share of the profits, his share in 1913 being one-half, amounting to $23,000; that the remaining profits were divided between Max Kobre and Sarah Kobre. On such facts Judge Chatfield held that Max Kobre, Sarah Kobre, and Ginsberg were partners in the Brownsville Bank, and directed that Sarah Kobre be made a party defendant. In the second proceeding, the question of Ginsberg's general partnership was submitted to Judge Veeder on evidence showing, in addition to the above facts, that in the spring of 1914 there was talk of such a partnership between Max Kobre and Ginsberg, Mrs. Kobre to retire from the business, and that during the following three months Ginsberg spent consider-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

able time at the Canal Street and Williamsburg Banks, examining their books and business, and that he gave directions for changes in certain accounts and methods of transacting business therein and between the two banks. On the other hand, it was shown that at Ginsberg's request his attorney prepared a partnership agreement which was submitted to Max Kobre; that, while both parties expected the partnership to be formed, Kobre objected to the terms of the agreement, and it was never signed by either party; also, that the directions given by Ginsberg respecting the business of the other banks were not carried out, some of them being countermanded by Kobre. On such evidence the court held that no partnership was actually formed, but that the acts of Ginsberg were explained by his expectation that one would be formed when the parties agreed on its terms and by his desire to that end to learn the condition of the other banks, and that the only partners in the Canal Street and Williamsburg Banks were Max and Sarah Kobre. On application therefor, Judge Chatfield made an order consolidating the second proceeding with that against the Kobres in the Southern district. From these several orders, a petitioning creditor in the second proceeding, who had been permitted to intervene in the first proceeding, appealed and also filed a petition to revise.

In the first of these proceedings, Judge Chatfield held that Max Kobre and Moses Ginsberg were copartners doing business as Max Kobre's Bank at Brownsville, in the borough of Brooklyn.

In the second, Judge Veeder held that Max Kobre and Sarah Kobre were copartners (and the only copartners), doing business as Max Kobre's Bank in Williamsburg, Brooklyn, and at 41 Canal street, Manhattan, New York City.

In the third, Judge Chatfield consolidated the two proceedings in bankruptcy, one as to the business conducted in Williamsburg, the other as to the business conducted in Manhattan.

By appeals and petitions to revise it is sought to reverse these decisions.

Morrison & Schiff (Leo Oppenheimer, of counsel, and Sidney Rossman, on the brief), for appellants.

Leon Sanders (L. E. Schlechter, of counsel), amicus curiæ for and on behalf of Samuel Pecker and others.

Simon & Weinstein, for appellees Joseph Kline and others.

Solomon S. Schwartz (James A. Sheehan, of counsel), for intervening creditors.

S. A. Telsey, for other appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. The petition to revise in the Brownsville proceeding is brought by Bessie Weinstein, one of the petitioning creditors in the other proceedings. We think she had no right to intervene in the first proceeding, nor to review the order made therein. However, as the throwing out of her petition would probably only lead to a re-presentation of the same questions subsequently by some one else, we think it best to dispose of them on the merits.

We concur fully with Judge Veeder's reasoning and conclusion; no one seems to dispute the proposition that Max and Sarah were partners, and there is certainly nothing in the evidence which would sustain a finding that, in the general business of Max Kobre's bank, conducted in Williamsburg or Manhattan by Max and Sarah, Ginsberg was a partner.

The testimony as to the Brownsville Branch, however, is quite different. Ginsberg was apparently the moving spirit of that branch, managing the business and regulating the affairs; moreover, concededly, he

shared in the profits. That by itself might not be sufficient, but would be. conclusive if he also shared in the losses. Of course, when no losses were made there would be none for him to share. But in one year there was a loss. · Instead of charging that up to the firm of Max and Sarah, and leaving Ginsberg free to divide the profits of the next year, the loss was carried along and half of it paid the next year by taking it from his share of the profits for that year. There seems to be every element present to make out partnership, except the signature of written articles. We fully concur with Judge Chatfield in his finding that Ginsberg was a partner in this Brownsville Branch.

We are also satisfied that the order of consolidation was a proper one.

The three orders are affirmed.