PRESTON, C. J., EVANS and SALINGER, JJ., concur.

---

THOMAS H. VAN SICKLE, Administrator, Appellee, v. M. E. DOOLITTLE, Appellant.

EVIDENCE:  Standard for Judging Alleged Malpractice.  Physicians of the allopathic school of medicine, who are not familiar with the homeopathic method of using or administering medicine or treating disease, are not competent, in an action for alleged malpractice growing out of homeopathic treatment, to give their opinion *as to whether certain medicine would produce any physiological effect, or any effect, on the patient;* and especially is this true when it appears that the homeopathic school seek, in their treatment, to avoid physiological effect.

·PRINCIPLE APPLIED: The allopathic physician in the above case was permitted, in the trial court, to state that certain medicine, diluted in a stated ma'nner, and given in stated doses, "would have no physiological effect," and that certain other medicine given in a certain way "would have no effect." *Held*, error.

EVIDENCE: Expert Testifying Directly to Reasonable Care. A 2 physician, though qualified as an expert in an action for alleged malpractice, may go no further than to state the *practice* or *custom* which prevails in the treatment of disease in the locality, and under the circumstances, in question. He may not wholly usurp the functions of the jury by stating that certain treatment *was not ordinarily skillful*. Especially may he not so testify when he·speaks solely from the standpoint of a school of medicine radically foreign to the one in question.

PHYSICIANS AND SURGEONS: Neglecting Patient. Failure of 3 a physician to regularly call upon the patient is a fact which may be received and given due consideration, along with other evidence bearing on negligence and proximate cause.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 25, 1918.

ACTION for damages consequent on alleged malpractice resulted in judgment for plaintiff. Defendant appeals.— *Reversed.*

*Snell & Randall* and *C. E. Gantt,* for appellant.

*C. A. Plank* and *Shull, Gill, Sammis & Stilwill,* for appellee.

LADD, J.—Marjorie Van Sickle died September 20, 1911, at age of nine years and some months. The defendant attended her as a physician during her last sickness. The petition alleged. that he failed to exercise ordinary care and skill in effecting a cure for the ailment with which the child was afflicted, in that (1) he neglected to visit her with such frequency as her condition demanded, and did,

1. EVIDENCE:
standard for
judging alleged
malpractice.

not respond with promptness when called, (2) failed to exercise ordinary care and skill in treating the patient for such ailment, and (3) omitted to administer proper medicines and skillful treatment, and neglected to do anything for her relief and cure when it became apparent that she was in a dangerous and precarious condition.

The facts appear in the opinion on the former appeal, and need not be repeated. 173 Iowa 727. The defendant belonged to the homeopathic school of medicine, and the treatment given the child must be measured by the rules and requirements of practitioners in that school.

As was pointed out on the former appeal, homeopathy and allopathy do not much differ in matters relating to anatomy, physiology, chemistry, pathology, surgery, and obstetrics.   In materia medica, therapeutics, and the principles and practice of medicine, the schools differ, and somewhat radically in medicines and the methods of using or administering them.

Several errors are assigned, but only rulings on the admissibility of evidence need be reviewed.

I.   E. W. Meis, a regularly licensed physician of the allopathic school, of 17 years' experience, testified that a preparation composed of one part of aconite and 999 parts of alcohol and water and one part of gelsemium diluted to the same degree, given in doses of from 4 to 7 drops, at intervals of one-half hour to an hour and one half, to a child 9 years old, as these were administered, would not have any physiological effect; and that bryonia diluted to one part of bryonia to 999 parts of alcohol and water, in doses from 4 to 6 drops in a teaspoon of water, and given every hour or two, as these were administered, would not have any effect on a child 9 years old.   In a hypothetical question, the history of the case was then recited, and the doctor was asked, "Should the child have been given medicine that would have had some physiological effect on

her body?" This was objected to, on the ground, among others, that the witness had not shown himself qualified to express an opinion concerning homeopathic treatment, or whether a physiological result was sought. The objection was overruled, and the doctor answered, "Well, of course, I don't know the exact way, the homeopathic way, of the treatment." The question was restated, and he answered, "Yes, sir."

The objection should have been sustained. The physician merely gave his opinion as to what treatment should have been given, according to the allopathic school of medicine. Notwithstanding his expressed ignorance of the homeopathic way, he was allowed to answer. The error is the more apparent from the testimony of defendant and Dr. Hanchette, a physician of the homeopathic school of 28 years' experience. The latter testified that homeopathists treated not diseases, but for conditions or symptoms of diseases; that their system was to administer small doses that would never produce physiological effect; that they take the totality of symptoms, and treat the symptoms in a disease. In calling a physician, a person is presumed to elect that the treatment shall be according to the system or school of medicine to which such physician belongs, and it would be unfair to measure such treatment by any other than the standards of such school; and the law will not tolerate testing treatment according to one school by the standards of another. That was precisely what was undertaken, and the objection should have been sustained.

The same witness was asked:

"What would you say as to whether or not the treatment that this child received was that ordinary skill which physicians and surgeons practicing in Hawarden, Iowa, or similar localities, in September, 1911, exercised?"

2. EVIDENCE: expert testifying directly to reasonable care.

This was objected to as calling for opinion of witness,

who had not shown himself competent to speak of home-
opathic methods of practice, and as asking him to give his
conclusion as to the ordinary skill exercised by physicians
in different places.    The objection should have been sus-
tained.   The doctor was not shown to be familiar with the
degree of skill exercised in such localities, nor does it ap-
pear that he had any knowledge of what would constitute
average skill on the part of a homeopathic physician.
Moreover, this was not a matter of expert testimony.   From
the facts proven, the jury only might deduce the conclusion
called for.

III.    The physician was then asked "whether, in your
opinion, the treatment given by Dr. Doolittle is such as a
physician would. have given in the same circumstances."
The same objection was interposed, and should have been
sustained.    Plainly, this was not a subject of expert tes-
timony.    The deduction was one for the jury to draw, from
all the evidence in the case.   Not only did it call for a con-
clusion, involving knowledge which the witness had dis-
claimed   possessing,—that   is,   concerning   homeopathic
methods of treatment,—but for such a conclusion of ulti-
mate fact as that the jury must have based the finding on
the matters and things recited in the hypothetical question.

Another interrogatory:

"I will ask you whether or not, in your opinion, the
child received such skillful care and attention as physicians
and surgeons practicing in Hawarden, Iowa, and the vicin-
ity or similar localities in 1911, usually and ordinarily ex-
ercised and showed."

This was objected to as calling for an opinion as to the
question which the jury was to determine, and on other
grounds heretofore mentioned.   The objection should have
been sustained.   The next question was:

"Whether or not, so refusing [to call upon the patient
as defendant did], the physician was exercising ordinary

care and skill usually possessed by physicians or surgeons in Hawarden or similar localities."

Objection should have been sustained. The witness might have testified what the practice or custom was in such cases, but making comparisons was not a matter of expert testimony. It was for the jury to say, in view of what defendant did, and in view of the usual practice or custom, whether he had been negligent.

IV. A similar series of questions was propounded to Dr. Fettes, who practiced as an allopathist, and was unfamiliar with the homeopathic system; and objections thereto were erroneously overruled. As pointed out, whether the child was treated with the degree of care and skill exercised by the average in skill and ability at Hawarden was not matter of expert testimony, but to be deduced by the jury from the evidence before them. It was not for the allopathist physician to say whether defendant had met the requirements in the treatment of the child, but for the jury to ascertain the truth from the evidence.

V. The evidence disclosed that the defendant did not regularly attend the child while sick, and delayed, as it would seem, unreasonably in responding to calls for his attendance. There was no definite showing that injury or any serious consequences followed his delinquencies in these respects, and it may be that, were this evidence to be considered alone, it would not furnish a basis for recovery. *Tomcr v. Aiken,* 126 Iowa 114. But his delinquencies, if such there were, were proper for consideration, in connection with other evidence, in ascertaining whether he had been negligent in his treatment of the child, and whether such delinquencies, in connection with his alleged lack of skill and improper treatment, if these were found, contributed to her death.

3. PHYSICIANS AND SURGEONS: neglecting patient.

Because of the errors in rulings on the admissibility of evidence, the judgment is—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.