ALICE M. FURGASON, Appellant, v. R. F. BELLAIRE, Appellee.

PHYSICIANS AND SURGEONS: Negligence or Malpractice. Evidence reviewed, in an action against a physician for negligence in his treatment of a patient for cancer, and held insufficient to show negligence or to justify submission of the issue to the jury.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

FEBRUARY 12, 1924.

ACTION at law, wherein plaintiff seeks to recover damages due, as is alleged, to defendant's negligence in burning plaintiff with radium, while treating her for cancer. Trial to a jury. At the close of plaintiff's testimony, the trial court directed a verdict for defendant. Plaintiff appeals.—*Affirmed.*

*H. A. Evans* and *Ward R. Evans,* for appellant.

*Snyder, Gleysteen, Purdy & Harper,* for appellee.

PRESTON, J.—The appellant contends that the only question presented is as to whether plaintiff's cause of action was barred by the Statute of Limitations, because the trial court sustained the motion on that ground. Two or three other grounds besides the Statute of Limitations were raised in the motion. The record is:

"The motion is sustained. (Plaintiff excepts.) Gentlemen of the jury, the court instructs you to return a verdict for de-

fendant, on the ground that the cause of action is barred by the Statute of Limitations.''

The grounds of the motion, stated briefly, are that defendant can be held liable for negligence only for failure to use proper and accepted methods in the application of radium, and that there is no evidence whatsoever in the case to show that defendant did not apply the radium in accordance with the usual, regular methods of applying said remedy in vogue in the use of radium at the time of the treatment in Sioux City or elsewhere throughout the country; that it does not appear from the evidence that the last two treatments given by defendant were not given in accordance with recognized methods in vogue, nor does it appear that the alleged burns claimed to have resulted from said treatments were more severe or more extensive than was required by the cancerous growth sought to be cured, it rather appearing from plaintiff's evidence that they were not severe or extensive enough to remove the cancerous growth; that plaintiff has failed to show that defendant is guilty of any negligence which was the proximate cause of the injuries of which she complains; that plaintiff's evidence further shows, by the doctor who last treated her case, that the present condition of her face is due to remedies applied by said physician last attending her, and not to any radium treatments given her by the defendant; that the evidence shows that all treatments by defendant, other than the last two, were had and given more than two years prior to the commencement of this action, and that all claims based upon any of said treatments other than the last two are barred by the Statute of Limitations.

Plaintiff alleges that defendant, located at Sioux City, Iowa, held himself out as a doctor of medicine, practicing radium and X-ray; that she employed defendant, who accepted her as a patient, and treated her by the use of radium. The negligence charged is that defendant negligently applied the radium, and that large areas of sound tissue were burned and destroyed; second, that the radium was negligently used and applied, in that it was permitted to slip about in plaintiff's mouth and come in contact with sound tissue, causing extensive burns. By an amendment to the petition she alleges that defendant was negligent in failing to remove the dead tissue caused by the radium

burns theretofore caused by him, and in not preventing the same from spreading to the sound tissue; that the negligence was continuous from June, 1920, and continued up to January 18, 1921, and that, as a result of defendant's negligence, she was severely burned by the radium on her lips and mouth, which caused extensive sloughing; that she was permanently disfigured, lost part of her lip and side of mouth, and extensive adhesions resulted.

The answer admits that defendant was practicing radium and X-ray, and that he treated plaintiff for cancer, and had a graduate nurse in his employ at that time; denies that he discharged plaintiff as cured; expressly denies that the injuries complained of, if any, were caused by his neglect; asserts that, if she is suffering from any injury, it was received by plaintiff subsequent to the time of defendant's treatment of her; pleads the bar of the Statute of Limitations.

It appears that plaintiff is 62 years of age; that, about 1918, a grandchild, in play, scratched her underlip near the corner of her mouth, causing a slight injury. It was sore, and when it healed, it left a lump about the size of a small pea. In June, 1920, the lump had commenced to grow. Plaintiff was alarmed. About the time she went to the defendant, the lump was about the size of a bean. She had heard that radium was good for cancer, and went to defendant. He told her she had a cancer. He gave her treatments with radium, applied by means of a tongue depresser or paddle, to which the radium was fastened by adhesive tape. The depresser was placed in her mouth over the lump, she reclining, with a towel under the end of the depresser. Defendant gave her three such treatments, the latter part of June or the first of July, 1920, on three successive days. The treatment lasted from 8:30 in the morning until noon, and from 1 to 4:30 each day. Plaintiff does not claim to have felt any burning in these three treatments, but they were followed by swelling and soreness. Plaintiff's husband testified that the first treatment of radium was in June, and that the swelling and soreness commenced in less than a week after. Plaintiff testifies that, soon after the first three treatments, her mouth became very sore and swollen, her tongue, cheek, and face swelled up, her eye was swollen, and her ear was painful. This condition continued all summer. Plaintiff had three subsequent radium

treatments by defendant—a light treatment two months after the first three (September, 1920), and two 20-minute treatments in January, 1921, about a week before she went to Missouri, January 18, 1921. She thought she felt the radium burn at the treatments in September and January, at which time her mouth was sore and swollen, and the place was raw. About this time, there were some white spots in her mouth, which Dr. Nichols says resembled leucoplakia. Before she left for Missouri, defendant talked of using an electric needle for this, and sent her to see another doctor a second time. Plaintiff's husband testifies that, just before plaintiff left for Missouri for treatments with Dr. Nichols, the defendant told her she did not need any more burning; that the cancer was killed, and when it sloughed, she would be all right. Plaintiff says there was some sloughing at the corner of her mouth when defendant treated her last, but Dr. Nichols states that the treatments he gave her sloughed the tissues away, and that he did not wait for the sloughing to start before beginning his treatment. Though plaintiff speaks only of a cancer on her lip, and says it was cured and removed by the first treatment of Dr. Nichols, it appears that her tongue was affected, and was treated by defendant in the last two treatments given by him; and Dr. Nichols says that the cancer was in the cheek. He says he cannot remember the condition of her tongue and throat. The plaintiff and her husband testify that, at the time of the two treatments in January, defendant applied the paddle to the side of her tongue 20 minutes, and the next day 20 minutes. There is no evidence that plaintiff was discharged by the defendant. She testifies that, after the last treatment, she "picked up and went to Missouri." When she arrived in Missouri, mouth washes were used, and warm applications. In about a week thereafter, Dr. Nichols applied his treatment, caustic, one application, and a few days thereafter, the cancer came out. Some weeks thereafter, they loosened the adhesions. Her tongue is now grown to the floor of her mouth, and some of the cheek is missing. The adhesions and disfigurement followed the treatment with caustics given her by Dr. Nichols, after she went to Missouri.

It is said by appellant that plaintiff was not instructed how to keep the depresser or paddle in position, or how to prevent

it from slipping in her mouth. Appellee contends that there is no evidence that she was not so instructed, and that, in any event, there was no evidence that any such instruction was necessary or customary. It appears that the only slipping of the depresser back into the cheek occurred at one of the treatments in June or July.

Dr. Kroning, the only medical witness testifying on this subject, says:

"I have had no experience whatever with radium; am not familiar with the way it is applied ordinarily by doctors in Sioux City or elsewhere; don't have radium in my office; have not used it; made no study of its use or the manner of its use by radium specialists. Never saw radium used in the treatment of cancer. Offhand, I would say you could hold it in place with adhesive strips; attach them to the lip, skin of the face, and perhaps inside of the lip, and to the paddle itself, if the disease is located on the top of the underlip. There is danger of the paddle slipping on account of the saliva wetting the adhesive strips. If that method were used, and the adhesive strips kept in place, I *imagine* it would result in holding the paddle in position."

On cross-examination, he testified:

"Q. Now it would be possible, wouldn't it, doctor, to insert the end of that tongue depresser upon which the radium is fastened next to the lower lip, and have the upper lip shut down on it and hold it in place, would it not? A. Well, I don't think I would want to answer that, because I am not dealing with radium. I believe that adhesive strips, if that is applied, would hold it fairly well. Q. You wouldn't say that the way I suggest isn't a proper and safe method of applying radium? A. I don't think I want to answer that,—I don't know. I am not dealing with radium. Q. You don't feel that you could qualify to say that that isn't a proper and usual method of treatment? A. That is the point."

Dr. Nichols, of Savannah, Missouri, further testified:

"A physician, graduate of the south, Sewanee, Tennessee. My specialty is the treatment of cancer. 26 years' experience. When I first saw her, January 20, 1921, she was suffering from radium burn and cancer, a swollen cheek, and some spots inside the mouth, larger inside of the cheek near the corner of

the mouth. Radium burn tends to destroy the tissue. The tissues were injured by radium burn, but not much of them had sloughed away. Our treatment sloughed them away. My treatment is largely to get rid of the dead tissue, and some cancerous tissue. Plaintiff was under my treatment nearly a month, the first time, and a few times afterwards. The last time, we saw no signs of cancer. There was some disfigurement from what we were compelled to do to stop the radium burn and cancer. I do not use and never have used radium, and have never taken a course in radium treatment. My treatment is a medical caustic,—chloride of zinc and chloride of antimony, a burning preparation,—and they absolutely destroy flesh. The result of medical caustic is, it burns and destroys tissue. I have not studied the theoretical science of radium. I am strictly opposed to the use of radium or the knife. I don't know whether the medical profession generally considers radium proper for surface cancers. Medical caustic causes sloughing. In some cases, the entire cheek bone will be visible. When healed, will leave a scar,—a sort of contraction. In plaintiff's case, it was necessary to slough off part of the tissue. If a person were to have a cancer upon the cheek, and you were to treat that case with medical caustics, if it were to have any effect, it would eat away and take a piece of the surrounding tissue. A cancer cannot be cured without taking away part of the sound tissue. After it is healed, it will be disfigured. I found leucoplakia, a disease of the mucous membrane of the mouth, resembling cancer,—not so deep. I don't think she had syphilis; used no formal test. Plaintiff has been back two or three times for treatment of cancer. She was not cured the first time. I have heard of very few men who advertised to cure cancer with caustics who are not physicians. Persons can use these caustics without being a graduate more successfully generally than those who have had a medical education. It has been our experience that a person with a fairly good education and four years' experience at the bedside would learn to use caustics and to be reasonably competent; not before. I have not treated a cancer patient except by caustics. We meet cases every day that are incurable. I have never treated cancer with radium, the X-ray, or incision. Q. You would not be able to say by examining a burn you say is a radium burn, as

to whether it was caused by careless application or direct application, would you,—not knowing the condition of the patient's mouth or cheek prior to the time of the application of radium? A. I think it would be the same; I don't use radium. Q. And you would not be able to say, not knowing? A. I don't think I can answer that.''

1. If any ground of the motion to direct a verdict was good, then the ruling sustaining the motion must be affirmed. We are clearly of the opinion that the motion was well taken as to at least one ground. It may be that others are also good, but as to such others we shall not take the time to discuss them separately at any length.

It is contended by appellee that there was no showing that defendant was negligent, and that it is necessary in cases of this character to show that defendant failed to exercise the knowledge and care usually and ordinarily exercised by practitioners in the same or similar localities. That this is the rule, see *O'Grady v. Cadwallader,* 183 Iowa 178, 192, 194; *Ferrell v. Ellis,* 129 Iowa 614; *Decatur v. Simpson,* 115 Iowa 348; *Whitesell v. Hill,* 101 Iowa 629. In the *O'Grady* case, it was said:

''There is no implied guaranty of results, and all the law demands is that the practitioner bring to the service of his patient and apply to the case that degree of skill and care, knowledge and attention, ordinarily possessed and exercised by practitioners of the medical profession under like circumstances and in like localities; and it is the general holding of the courts that the bare fact that full recovery does not result, or that a surgical operation is not entirely successful, is not, in and of itself, evidence of negligence; * * * Upon the facts shown in this record, we feel that any verdict rendered by a jury would rest upon the merest speculation, and could find no support in any tangible fact shown by the plaintiff.''

Such is the situation in the instant case, as we view it. It is also contended that such proof can be made only by the testimony of experts qualified to speak on the subject. Appellee cites to this proposition *Snearly v. McCarthy,* 180 Iowa 81; *Van Sickle v. Doolittle,* 184 Iowa 885; *Cozine v. Moore,* 159 Iowa 472; *Sheldon v. Wright,* 80 Vt. 298 (67 Atl. 807); *Kreuger v. Chase,* 172 Wis. 163 (177 N. W. 510); *Miller v. Toles,* 183 Mich.

252 (150 N. W. 118). Also, that an opinion by a physician as to what he considers proper, skillful, or the best treatment, is no criterion for judging negligence of another physician. *Van Sickle v. Doolittle*, supra; *Tomer v. Aiken*, 126 Iowa 114. As to the first proposition above stated, it is argued that there is no testimony in this case from any source indicating that the defendant failed to observe the usual and ordinary practice of his profession in administering the applications of radium, or in the treatment accorded plaintiff after such application. We think this is the fact. We have set out the evidence somewhat fully, and we fail to find any evidence in the record to sustain the burden imposed upon plaintiff in this regard. Appellant meets this proposition by saying that the record is not lacking in expert testimony tending to prove that defendant failed to exercise the skill and care ordinarily exercised by physicians and surgeons in the same or similar localities.

"We call attention to the evidence of Dr. Nichols, of Savannah, Missouri, who has studied medicine three years in Sioux City, Iowa, and has practiced in the adjoining and similar localities of Sioux Falls and Watertown, South Dakota" (referring to certain pages in the abstract). Dr. Nichols testified, in addition to what we have before set out:

"I have been practicing in Savannah in the cancer business twelve years; prior to that at Hot Springs, South Dakota, about ten years, at Sioux Falls, Watertown, South Dakota, and seven or eight months at Excelsior Springs, Missouri. I graduated in 1901. Commenced treating cancer cases in 1906 or 1907. I was associated with physicians as a medical student and in this work about five years before I graduated. I had three years at Sioux City, and took my final year at Sewanee."

The evidence is very meager as to the point now under consideration. From the foregoing, it appears that his experience in Sioux City was prior to his graduation in 1901, 20 years before the transaction in question. His experience in South Dakota was before he went to Missouri,—12 years prior thereto. Furthermore, there is not a word in regard to the standard possessed and exercised at Sioux City, in South Dakota, or even in Missouri. Still further, he testifies he knows nothing about the use of radium or the practice or treatment in reference thereto.

We feel so clear about this that it is unnecessary to more than refer to the other points.

2. It is further contended by appellee that plaintiff's injuries, other than the original burning in June and September, were not shown to have been proximately caused by defendant's treatment; that, when an intervening agency produces the injurious consequences, such agency is the proximate cause (citing *Mahoney v. Dankwart,* 108 Iowa 321; 29 Cyc. 499; *Johnson v. City of Omaha,* 108 Neb. 481 [188 N. W. 122]; *Childs v. Standard Oil Co.,* 149 Minn. 166 [182 N. W. 1000]). The argument is that the adhesions and the operations for their removal and the disfigurement of which plaintiff complains in this case were directly caused, according to Dr. Nichols' testimony, by the treatment with medical caustics which he gave her; that, when plaintiff went to Dr. Nichols for treatment, she was suffering from inflammation and swelling in her cheek; that her subsequent afflictions were all due to the treatment she received at the hands of Dr. Nichols; and that these were, therefore, the cause of her injuries, except the original radium burn. Considering all the evidence, we think there is force in this contention; but under the circumstances, we deem it unnecessary to enter into any extended discussion of the point.

3. This action was begun December 16, 1922. On the question of the Statute of Limitations, appellant cites *Fadden v. Satterlee,* 43 Fed. 568; *Gillette v. Tucker,* 67 O. St. 106 (65 N. E. 865). Appellee also cites the *Fadden* case, but we think it is not helpful to either side. The case was determined upon demurrer to the petition. There were but two points decided: First, as to whether an action of this character was barred in two years, under Paragraph 1 of Section 2529 of the Code of 1873, or whether it came under Subdivision 4 of that section. It was held that it came under Paragraph 1, and was barred in two years. The other point was that, since the treatment ended November 17, 1887, and the suit was not brought until November 23, 1889, there was no view that could be taken of the facts alleged which would justify a holding that the cause of action accrued within two years before the bringing of the action. It was further said that the statute as to actions for personal injuries begins to run at the time the injury is received, although

its results may not be then fully developed (citing *Gustin v. County of Jefferson*, 15 Iowa 158). The *Gillette* case was affirmed by operation of law, the court being evenly divided. There was a dissenting opinion by three of the justices. The opinion of the other three is to the effect that, where a surgeon carelessly forgot to remove a sponge from the abdominal cavity after an operation for appendicitis, and the sponge remained therein, and such condition continued during his professional relation and was present when he abandoned or otherwise retired from the case, the Statute of Limitations did not commence to run until the professional relation terminated. The dissenting opinion holds that leaving the sponge was a part of the original operation, and was not and could not be negligence in the after treatment.

It is appellant's contention in the instant case that the short treatments after September 1, 1920, were continuing, and that the statute did not begin to run until January, 1921, when plaintiff, as she says, "picked up and went to Missouri." She was not discharged by the defendant, and he had no opportunity, after she left, to treat her and cause the sloughing off of the cancer, or the dead or burned tissue, which Dr. Nichols says was necessary. This last is the matter set up in the amendment to petition, and the only matter alleged to have occurred within two years prior to the commencement of the action, which appellant argues makes the treatment continuous, and relates back to the original burning. Appellee cites the following cases, in line with the *Gustin* case, supra: *Ogg v. Robb*, 181 Iowa 145; *Gardner v. Beck*, 195 Iowa 62; and other cases. In the *Gardner* case, Mr. Justice Evans, speaking for the court, said:

"It is the general rule obtaining in this state that a cause of action for damages for injury done accrues immediately at the time of the wrongful injury. * * * This is only saying that, when one suffers a personal injury through the wrongful act of another, he has an immediate right of action to recover therefor; and this is so even though the amount of his recovery as damages may be and usually is affected by future developments and future probabilities. Such future developments may add new elements of damage, and thereby enlarge the amount to which he may be rightfully entitled. These additional elements of dam-

age, however, attach themselves to .the original cause of action, and do not become of themselves independent causes of action.''

We are inclined to the view, adopted by the trial court, that the injuries of which plaintiff now complains, in so far as they are related to anything done by the defendant, were done not later than September, 1920, and that her cause of action accrued when the original burnings were done. But in view of the fact that the proposition discussed in Paragraph 1 hereof is decisive of the case, further discussion or a definite determination of the question is unnecessary. We have referred to the matters in this and the next prior paragraph of the opinion because of the state of the record. The judgment is—*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.