## STITZER HOTEL CO. v. BEYER et al.
### No. 4654.

Circuit Court of Appeals, Third Circuit.
Jan. 22, 1932.

See, also, In re Stitzer Hotel Co. (D. C.) 29 F.(2d) 571.

Bourgeois & Coulomb and Wm. B. Hunter, Jr., all of Atlantic City, N. J., for appellant.

Bolte & Tripician and Harry Miller, all of Atlantic City, N. J., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge.

By involuntary petition filed December 31, 1927, the Stitzer Hotel Company, a corporation of the state of New Jersey, doing business in Atlantic City, was alleged to be a bankrupt owing debts approximating $175,000. The petition alleges that petitioners are creditors, having provable claims amounting in the aggregate, in excess of the

securities held by them, to approximately $18,000.

The petition alleges that the hotel company is insolvent and that it committed an act of bankruptcy on the 26th of September, 1927, by paying to the Chelsea National Bank $7,500 on account of a promissory note in the sum of $15,000, payable three months after its date, which was July 11, 1927. That on the 5th of October it paid to the bank $2,000, on account; on October 11th, it paid $2,500 on account, on which latter date it made and delivered a renewal note for the balance of $3,000, payable one month after date; and that on October 17, 1927, it paid the sum of $3,000, which paid off the note in full.

The answer denies that the hotel company committed an act of bankruptcy as set forth, and further denies its insolvency. There are only two questions involved in this situation:

First, was the alleged bankrupt insolvent on the dates alleged preferences were given? And

Second, were the preferences in fact given by the alleged bankrupt?

The proceedings were delayed from the date of the filing of the petition, December 31, 1927. The order of the court adjudging the company bankrupt was not entered until May 18, 1931. The insolvency of the alleged bankrupt was sought by petitioners to be proved by the testimony of one George R. Specht, bookkeeper of the defendant company. Through this witness, a balance sheet dated October 31, 1927, was introduced, showing a deficit as of that date of $120,408.28, and a balance sheet dated December 31, 1926, showing a deficit as of the latter date of $54,371.77. The books did not show the actual financial condition of the company as of the dates when the alleged preferences were given, nor could the witness testify as to the condition of the company at those dates because, as he said, "There may have been periods during the summer months when the deficit was balanced by accumulated profits."

In both of said statements, the real estate holdings of the company were valued at approximately $800,000, but one Morganweck, a witness produced on behalf of the petitioners, placed a valuation on the real estate of $475,000. This witness was offered as an expert, but his qualifications as such were disputed.

The testimony showed that between August 31, 1927, and October 17, 1927, the hotel company paid off promissory notes made by it totaling the sum of $30,000 to the Chelsea National Bank. A number of these notes were paid before they were due, and such practice was shown to be the usual course of business in Atlantic City, where the bulk of the business is done during the summer season. The officers of that bank all testified that they had no knowledge of the fundamental condition of the company when the payments were made, or that such payments were, or did amount to, preferential payments.

■ Petitioners having charged the defendants with the commission of acts of bankruptcy, the burden is on them to prove that the defendants were in fact insolvent on the dates the alleged preferences were given. In addition to the payments made to the Chelsea National Bank, the evidence showed that the company paid off a note of $10,000 to the Chelsea National Bank on August 21, 1931, and another in the amount of $5,000 on September 6, 1931.

■ We are of opinion that a careful examination of the testimony of Specht discloses that he had no such real knowledge of the financial condition of the company as entitled him to speak as an expert. The witness was unable to tell the financial condition of the company at the time the various alleged preferential payments were made. He was not able to give, within the period covered by those payments, any substantial loss of any large amount. The witness admitted, inasmuch as the company was a going concern, that any deficit which might appear at a particular date might have been entirely wiped out during the summertime, and have re-established itself after the summer season was over. The most that can be said of Mr. Specht's testimony is that the company conducted its business at a loss from December 31, 1926, to October 31, 1927, with the possibility that this loss was equalized during the months of the summer season. The mere fact that the books of the company show an operating loss over a period of time does not prove that the company was actually insolvent during that period within the meaning of the act of Congress. A fair value of all the assets and capital of the business must always be considered. The comparative statements for the years 1926 and 1927, which appear in the exhibits, show only that the expenditures of the company during that period exceeded its actual income. It does not take into account the fair value of the capital or assets of the

company during that time. This is also true of the following ten months after January 1, 1927, when the total gross receipts for the operation of the business were approximately $260,000, while the total operating expenses were over $275,000. It will appear that all the testimony in the case relating to insolvency existing in August and September of 1927 referred only to an operating deficit, and not to an insolvency, within the meaning of section 1 (15) of the Bankruptcy Act (11 USCA § 1 (15). The language of the act is as follows: "A person shall be deemed insolvent within the provisions of this title, whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." This language prescribes the true test, and being so applied, insolvency cannot fairly be found under the testimony of Mr. Specht. It appears from the memorandum filed by Judge Avis that he relied chiefly upon the balance sheets of December 31, 1926, and October 31, 1927, and inferred therefrom that appellant was actually insolvent on the dates of the alleged preference. It would seem that the information appearing on the balance sheets is too remote to form the basis for such inference. An examination of both balance sheets appears to show that the company was in fact insolvent as of December 31, 1926, and October 31, 1927. On each statement, the capital stock of the company is listed as a liability. In the statement of October 31, 1927, the common and preferred stock is valued at $283,001. The court sustained the contention of counsel for defendant that this stock cannot be taken into account in determining the insolvency of the company.

This leaves only the question of the value of the testimony of one Morganweck, an alleged real estate expert, who testified that the value of the real estate as of August 31, 1927, was $475,000, thus reducing the value as carried on the books of the company by $314,000. An examination of the testimony of Morganweck, as to his qualifications as an expert to speak of the value of a large hotel on the boardwalk in Atlantic City, convinces us that he did not have the legal qualifications required to enable him to speak as an expert. His cross-examination shows that he had never bought or sold hotel property of the character of the "Royal Palace"; that he was not a practical builder; and that the only experience he had in building was in reference to some cottages which were built for him, not exceeding in value from $15,000 to $20,000. It should be remembered that the witness was asked to appraise, not only vacant and unimproved real estate, but also a beach-front land with a large hotel erected thereon. It certainly should have been shown that he had some experience with buildings of this size and character, before he could be permitted to testify as to its value; yet he admits that he had no such experience. Not having that special and peculiar knowledge or experience concerning the value of hotels generally, and beach-front hotels in particular, he could not qualify as an expert to testify as to the value of the property in question. This position is sustained by many cases. See Clark v. Rockland Water Power Co., 52 Me. 68; Heald v. Thing, 45 Me. 392; Laing v. United N. J. R. R., 54 N. J. Law, 576, 25 A. 409, 33 Am. St. Rep. 682; Grainger v. Still, 187 Mo. 197, 85 S. W. 1114, 70 L. R. A. 49; Van Sickle v. Doolittle, 184 Iowa, 885, 169 N. W. 141; In re Kobre et al. (C. C. A.) 224 F. 104.

If the testimony of this witness was not competent, then the petitioners wholly fail to prove insolvency. If there was no insolvency, there could be no preferential payments.

With reference to preferential payments, the act of Congress provides that acts of bankruptcy by a person shall consist of his having (2) transferred, while insolvent, any portion of his property to one or more of his creditors, with intent to prefer such creditors over his other creditors. Bankr. Act § 3, 11 USCA § 21 (2). The payments of large sums of money to different persons during the course of business manifest, to us, no intent to prefer creditors, and unless such intent exists, payment cannot be held to be preferential.

We are by no means satisfied that the proofs in this case establish insolvency and the commission of the acts of bankruptcy charged.

The judgment is therefore reversed.