In the Matter of **EASTERN ERECTORS, INC.**, Alleged Bankrupt.

No. 71–786.

United States District Court, E. D. Pennsylvania.

Aug. 3, 1972.

David Weinstein, Philadelphia, Pa., for petitioning creditors.

Pace Reich, Philadelphia, Pa., for respondent.

## OPINION AND ORDER

MASTERSON, District Judge.

This matter is before us upon a Petition for Review of the Referee's Order dismissing the Creditors' Involuntary Petition in Bankruptcy.

On November 10, 1971, Falls Equipment Corporation, American Equipment Corporation, and Francis Pinciotti, Jr., filed a Petition alleging an involuntary bankruptcy against Eastern Erectors, Inc., setting forth, as an act of bankruptcy a preferential transfer on Octo-

ber 16, 1971, while the alleged bankrupt was insolvent. The act of bankruptcy was admitted, but respondent denied its insolvency. Several lengthy hearings were conducted and Referee Goldhaber found that the alleged bankrupt was solvent on October 16, 1971. After careful consideration of the creditors' objections, we affirm the referee's Opinion and Order.

At the outset, it is important to note that the referee ruled properly as to the burden of proving insolvency. (N.T. 21). The preferential transfer of property would constitute the Second Act of Bankruptcy,[1] and since insolvency is an element of this allegation, the primary burden of proving this financial condition is on the petitioning creditors. Stitzer Hotel Co. v. Beyer, 55 F.2d 620 (3rd Cir. 1932) ; 1 Collier on Bankruptcy, ¶3.208, p. 456.[2]

The thrust of the creditors' position is that items which the referee found to be properly classified as capital investments were actually liabilities of the corporation. Two items totalling $16,500. would, if classified as liabilities, bring the total liabilities to a figure above that of total assets.[3]

First, the creditors challenge Finding of Fact No. 9: "The loans made to the corporation by shareholders were really capital investments." We are asked initially to reverse the referee's *factual* determination that the $6,500. in question was invested by the shareholders and not some other creditor of the corporation. It is clear that we must accept the referee's findings of fact unless clearly erroneous. General Order of Bankruptcy 47, 28 U.S.C.A.

---

1. § 3(a) (2) of the Bankruptcy Act, 11 U.S.C. § 21(a) (2).

2. Since there was full disclosure of all books and records, the burden of proof did not shift to respondent. 11 U.S.C. § 21 (d).

3. The referee found that the total assets of the corporation exceeded total liabilities by $9,676.04. (Finding of Fact Nos. 4 and 5).

The Bankruptcy Act provides that:
"A person shall be deemed insolvent within the provisions of this title whenever the *aggregate of his property*, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts." 11 U.S.C. § 1(19) (Emphasis added).

The creditors rely heavily upon the absence or insufficiency of respondent's proof that these funds were derived from the shareholders.[4] However, since the burden of proving otherwise was on the creditors who presented no evidence as to this point, we are satisfied that the referee's finding of fact was correct.

The significance of the creditors' concern with the factual determination is found in the referee's Conclusion of Law No. 3: "As a matter of law, where a corporation is under-capitalized, loans made to the corporation by its shareholders, are treated as capital contributions." The creditors maintain that this item, which was recorded on the balance sheet of the alleged bankrupt as a liability, "loans from stockholders," should also have been considered as a liability by the referee when the determination of insolvency was made. While the referee's legal conclusion was stated overbroadly, we are satisfied, after examining the record, that this $6,500. was properly considered as a capital investment by the referee.

While apparently being a novel issue in a bankruptcy context, this debt-equity issue has been extensively litigated under the Internal Revenue Act. The determination of whether an advance made by a stockholder to a closed corporation creates a true debtor-creditor relationship or actually represents a contribution to capital is often critical in assessing the tax consequences of a distribution to the shareholder. While this tax question is obviously not raised here, we find the analysis made in these various debt-equity cases helpful in deciding the issue presented.

The referee was correct that thin or inadequate capitalization is indicative of a capital contribution rather than a loan by a shareholder.[5] However, this is only one of several factors to be considered in making the debt-equity determination, and the broad generalization recited by the referee is not dispositive. The issue can only be decided by analyzing the particular facts of each case. John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278 (1946).

While many combinations of factors are found in the analysis of the debt or equity status of shareholders' interests,[6] the following is a typical list of the guiding considerations:

"(1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions."

Dillin v. United States, 433 F.2d 1097, 1100 (5th Cir. 1970).

---

4. Respondent's accountant testified that based on his knowledge of the transactions of the corporation, $6,500 was invested by shareholders and carried on the books as "Loans from Shareholders." (N.T. 244).

5. If the $16,500 in question were liabilities rather than capital investments, the total stockholder's equity in the corporation would be $30, reflecting the original shares subscribed for (N.T. 247). This would obviously be insufficient to generate revenues of $209,230.90 for the nine months preceding October 16, 1971. (Finding of Fact No. 6).

6. One researcher has compiled a list of at least thirty-eight different factors used by the courts to determine this issue. Holzman, The Interest-Dividend Guidelines, 47 Taxes 4, January, 1969.

With these considerations in mind, it is clear that the creditors failed to satisfy their burden of proving that these interests were loans rather than capital investments. Generally, there is no evidence that these funds were not placed at the risk of the business rather than advanced with reasonable expectations of repayment regardless of the success of the venture, nor that there was a certain time for repayment. Without specifying the lack of proof as to each relevant consideration (in addition to the undercapitalization cited by the referee) it suffices to say that we find no proof which would lead us to conclude that these investments were loans.

The second item which, the creditors argue, should have been included as a liability of the alleged bankrupt is $10,000 carried on the books of the corporation as $5,000 stated capital and $5,000 capital surplus.[7] Essentially, the creditors point to the lack of any supporting information to justify the accountant's determination of these figures.

The accountant testified that a meeting of the Board of Directors was held in March of 1971 at which the allocation of the $10,000 to capital and capital surplus was approved. (N.T. 191). However, no such entry appears in the minutes of the corporation and the petitioning creditors maintain, without any proof, that no such meeting was held.

The referee found otherwise, and he held, as a matter of law, that:

"In a small, closely held corporation, minutes need not be filed to reflect any action by its board of directors. Such action may be proven by parole evidence." Conclusion of Law No. 2.

While we agree with the referee on this point, we conclude that the result would be the same even if petitioners were correct that the unrecorded corporate action was a nullity. Since the referee found these funds were derived from shareholders, as the record now stands, they would be properly considered as capital items regardless of the technical validity of the capitalization, as were the "loans from stockholders" for the reasons stated above.[8]

Petitioners point to two other items which would reduce the surplus of assets over liabilities by $3,737.13. First they argue that the alleged bankrupt failed to prove that there was actually $1,971.19 "cash on hand" as found by the referee. Again, the petitioners ignore their burden of proving that this figure, as carried on the books of the corporation, was not accurate. Finally, even if the petitioners are correct that the liabilities should have been increased in the amount of $1,765.94 for interest and penalties, this would obviously not change the result where the surplus found by the referee is over $9,000.

The petition will be dismissed.

7. To the extent that petitioners challenge the referee's factual determination that these funds were actually derived from persons who were shareholders, the referee's findings must stand for the reasons stated above.

8. It is, therefore, unnecessary to decide whether the subsequent meeting of the board ratifying the capitalization, which was properly recorded, could be given retroactive effect. It is interesting to note, however, that petitioner's expert indicated that in the accounting sense, such an action would support the recognition of these items as capital. (N.T. 285, 287).