## In re FRED D. JONES CO.

### HELDMAN v. CENTRAL TRUST CO. OF ILLINOIS.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1920. Rehearing Denied December 9, 1920.)

No. 2432.

1. **Bankruptcy ⊂⇒160—In determining question of preference, bankrupt not treated as going concern, unless in fact such.**

   The rule that, in determining the question of a bankrupt's insolvency at the date of an alleged preference, the valuation must relate to the bankrupt's condition as a going concern, does not apply, unless the debtor was in fact a going concern.

2. **Bankruptcy ⊂⇒160—Fair value of assets under actual circumstances test of insolvency at time of preference.**

   In determining the question of a bankrupt's insolvency at the time of an alleged preference, the inquiry is simply as to the fair value of the assets under the actual circumstances.

3. **Bankruptcy ⊂⇒160—Master held not compelled to accept face value of accounts in determining question of preference.**

   Where a large part of the business of a retailer of jewelry on the installment plan, who became bankrupt, was with denizens of the red light district, and a large part of the accounts were from four months to three years behind, the master *held* not compelled as a matter of law to accept the face value of the accounts in determining whether the bankrupt was solvent at the time of an alleged preference.

4. **Appeal and error ⊂⇒1022(3)—Confirmation of master's report on conflicting oral testimony has force of verdict.**

   Conceding that a master's report under an ordinary reference is advisory only, and only presumptively correct, yet when the chancellor, after a full hearing on exceptions, confirms the report, appellant is in no

better condition to base error on the chancellor's refusal to accept his testimony, as against that of appellee's witnesses to the contrary, than if he were attacking a jury's verdict.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the Fred D. Jones Company, bankrupt; the Central Trust Company of Illinois, trustee. From a decree approving a finding of the master that he had received an illegal preference, Julius N. Heidman appeals. Affirmed.

Edward Maher, of Chicago, Ill., for appellant.

John P. Barnes, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

BAKER, Circuit Judge. Appellant assails the trial court's approval of the master's finding that appellant received an illegal preference.

Nothing is directly involved but two questions of fact: Did the liabilities of the Jones Company exceed the fair value of its assets when appellant took security for an antecedent debt? Did appellant then have reasonable cause to believe that the Jones Company was insolvent?

Witnesses testified orally before the master. Then, in order to follow and verify or reject conflicting arguments of counsel, the master caused the evidence to be reduced to writing. With his report of findings he turned into court 1,780 pages of testimony and 171 exhibits. After appellant had been given full opportunity to show from that record that any material finding of the master was erroneous, the trial court confirmed the master's report. On this appeal the condensed certificate of evidence comprises over 400 pages. Appellant presented 120 pages and appellee 76 pages of argument respecting the facts established by the record. Additionally we have had the benefit of a full oral presentation of the case.

Ordinarily we should consider it enough to say that we have found no error in the trial court's approval of the master's findings of fact. But throughout appellant's arguments run certain misconceptions of the law, which may justify notice.

[1, 2] 1. Respecting insolvency: Appellant quotes from Butler Paper Co. v. Goembel, 143 Fed. 295, 74 C. C. A. 433, 16 Am. Bankr. Rep. 26:

"The valuation for the test of solvency or insolvency under the issue must relate to the conditions, as a going concern, when the alleged preference was given, and not to the mere dead matter of the plant after bankruptcy intervened."

This statement on its face was intended to apply to a situation in which the debtor was in fact "a going concern" when the alleged preference was given. It cannot be accepted as a general rule that in every situation the debtor must inevitably be regarded as "a going concern," even if at the time of giving the alleged preference he was financially dead or mortally wounded. 2 Remington on Bankruptcy, § 1352; Woodman on Trustees in Bankruptcy, § 304; Spencer v.

Nekemoto, 24 Am. Bankr. Rep. 517; Louisiana National Life Assurance Co. v. Segen (D. C.) 196 Fed. 903, 28 Am. Bankr. Rep. 19; In re Coddington (D. C.) 118 Fed. 281, 9 Am. Bankr. Rep. 243. The inquiry is simply this: What in the actual circumstances was the fair value of the assets of the debtor (afterwards the bankrupt) when he paid or secured the antecedent debt?

[3] In this case the Jones Company was a retailer of jewelry in Chicago on the installment plan. Its salesmen solicited and procured three-fourths of its business from the denizens of the red light district. At the time now in question the concern had pledged a large part of its stock in trade as security for current loans with which to go on with its business, and the cream of its installment accounts had likewise been hypothecated. Petition in bankruptcy was filed on January 20th. Between the 12th and 18th of that month appellant received alleged preferences; and on the 14th he went from Chicago to New York to try to have the principal creditors compromise and make extensions. During this period the books of the Jones Company showed installment accounts in the sum of $76,000, divided as follows: Less than four months old, $20,000; four months behind, $14,000; one year behind, $6,000; one to three years behind, $36,000. Considering the character and financial standing of the purchasers in the red light trade and the scatterings due to police raids and other causes, the master was not compelled, as a matter of law, to accept the face value of these accounts; and we find from the evidence that the master gave appellant the benefit of a fair valuation in the circumstances as they existed at the time of the alleged preferences.

[4] 2. Respecting appellant's knowledge or reasonable cause to believe: Granting appellant's contention, based on Kimberly v. Arms, 129 U. S. 515, 9 Sup. Ct. 355, 32 L. Ed. 764, and other cases, that a master's report under an ordinary reference has not the binding force of a jury's verdict, is simply advisory to the chancellor, and is only presumptively correct, yet when the chancellor after a full hearing on exceptions has confirmed the report, and on appeal we are asked to base error on the chancellor's refusal to accept appellant's testimony on a matter of fact as against testimony of appellee's witnesses to the contrary, we find appellant in no better position than if he were assaulting a jury's verdict. Neither the chancellor nor ourselves saw the witnesses; the master did; and the master's report involved a finding on credibility of witnesses personally appearing before him and nowhere else. One instance will suffice to illustrate the point. Jones Company's credit man testified for appellee that he had informed appellant that the accounts were worth at least $30,000 less than face. Appellant testified that no such information had ever been given to him and that he believed the accounts were of full face value. Which was the more credible witness? We do not know; but we can at least say that the printed page affords us no means of deciding that the chancellor erred in accepting the master's estimate of the opposing witnesses.

The decree is affirmed.