## ST. JOE PAPER CO. et al. v. UNITED STATES.

### No. 11528.

Circuit Court of Appeals, Fifth Circuit.

April 18, 1946.

Rehearing Denied May 11, 1946.

WALLER, Circuit Judge, dissenting.

———◇———

J. W. Harrell, of Jacksonville, Fla., Weldon G. Starry, of Tallahassee, Fla., and James H. Finch, of Marianna, Fla., for appellants.

George Earl Hoffman, U. S. Atty., of Pensacola, Fla., and J. Edward Williams, Acting Head, Lands Division, Dept. of

Justice, and Dwight D. Doty and Roger P. Marquis, Attys., Dept. of Justice, all of Washington, D. C., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

On May 8, 1941, the Secretary of War under authority of congressional acts,[1] by filing a declaration of taking, condemned to public use 28,517.65 acres of land in Bay County, Florida, for the establishment of an Air Corps Flexible Gunnery School near Panama City, to be known as Tyndall Field. Appellants owned 23,357.95 acres of the total acreage condemned. The St. Joe Paper Company owned 11,954.39 acres; H. H. Wells owned 998.95 acres; and Harry E. Shiland owned 404.62 acres. Being dissatisfied with the compensation awarded by the jury, each separately appealed from the judgment in his favor based on the award.

Appellants' specifications of errors[2] concern: (1) Admission of testimony of W. H. Bingham, a Government witness, over

---

[1] February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. 258a; July 2, 1917, 40 Stat. 241, April 11, 1918, 40 Stat. 518, 50 U.S.C.A. § 171; August 12, 1935, 49 Stat. 610, 10 U.S.C.A. § 1343a et seq.; September 24, 1940, Public Resolution No. 99, 76th Congress, 54 Stat. 958.

[2] Assignments of Errors:

"1. The Court below erred in denying each and every of the Motions for New Trial as filed by the defendants, St. Joe Paper Company, Harry H. Wells, and Harry E. Shiland.

"2. The Court below erred in denying the motion of the defendant, St. Joe Paper Company, to strike from the record the evidence given by W. H. Bingham, witness for the Government, made upon the ground, among others, that the said witness was not shown to be a qualified witness to testify as land values respecting the lands of defendant, St. Joe Paper Company, but on the contrary it was shown by the admissions and testimony of such witness that he was not a qualified witness.

"3. The Court below erred in refusing to permit the witness Brown Whatley, witness for the defendant, St. Joe Paper Company, to testify as to his opinion of values of land of said defendant, St. Joe Paper Company, or to testify and give his opinion as to the most profitable use to which said defendant's lands might be put.

"4. The Court below erred in refusing to permit the witness Ed Ball, president of St. Joe Paper Company to testify that at the time of the taking of said company's land in this cause, there was a demand for the lands of the type and character of said defendant's land in that area,—that there was a market for such land.

"5. The Court below erred in refusing to allow the witness Ed Ball, who had purchased the lands of St. Joe Paper Company to testify as to the purposes for which said lands had been bought, and for which they were being held.

"6. The Court below erred in refusing to allow the witness, Ed Ball, to testify as to what use or adaptability of said land for use the witness had based his valuations on.

"7. The Court below erred in permitting the witness Ed Ball, with respect to the purposes for which the lands of St. Joe Paper Company were being held, to testify only as to whether said lands were being held for farming or growing timber, and refusing to allow the witness to testify as to any other purpose for which the said lands had been acquired, or were being held.

"8. The Court below erred in striking from the evidence the testimony of Ed Ball, witness, given in response to the following question:

" 'Q. Mr. Ball, please state the highest and most profitable use, or all uses, for which the property of the defendant, St. Joe Paper Company, involved in this suit, was suitable or adaptable on May 8, 1941 (date of taking) ?'

"And in instructing the jury to disregard the evidence given by said witness to said question.

"9. The Court below erred in sustaining objection of Government counsel to the question propounded to Ed Ball, witness:

" 'Q. Mr. Ball, I will ask you whether or not on or prior to May 8th, 1941, you had an opportunity to sell this property?'

"10. The Court below erred in refusing to allow the witness Ed Ball to testify as to the uses for which the lands of defendant, Harry H. Wells were adaptable,—notwithstanding the record shows that the witness was thoroughly familiar with said lands, their type, character and location and the uses to which they might have been put.

"11. The Court below erred in striking from the evidence the testimony of the witness Ed Ball as follows:

" 'The property was best suited and

objections as to his qualifications; (2) exclusion of testimony on the adaptation of the land to certain uses; (3) exclusion of testimony on the purposes for which the land was purchased in the twenties and held at the time of condemnation; (4) exclusion of testimony on offers made by prospective purchasers. The appellants urge that the unfair and incomplete picture rendered to the jury by these errors resulted in grossly inadequate awards.

The alleged ground of W. H. Bingham's disqualification is ignorance both of property values in the vicinity of appellants' property and of values of comparable property.

■ The qualifications required of an expert before he may give an opinion is a question for the trial judge and his decision thereon is conclusive, unless clearly erroneous as a matter of law.[3]

In overruling objections to this witness testifying as to values, the trial court said:

"The witness having testified that he has had nine years' experience in the appraisal of land and some five years of the nine in the State of Florida; that prior to his appraisal of the land in question he appraised different tracts within a radius of ten miles—I believe that is correct—of the property in question; that he has an opinion which he arrived at from his experience as an appraiser and from talking with people, with persons who were acquainted with the market value of the land in question, and from an investigation of the public records whereby he ascertained what sales had been made, and the prices paid therefor, of land comparable to the land in question; the Court is of the opinion that he is qualified to express an opinion in this proceeding."

In passing upon the motion to strike the testimony of this witness on the ground that he had not qualified as an expert, the court said:

"The witness has not only testified as an expert appraiser, but he has testified that he reached his opinion * * * from sales made in the community, of which he had knowledge through the records and by consulting real estate men and others who knew the value of the property. Now this is an effort to disqualify the witness upon the ground that he has never appraised a piece of property of the exact character of this property, bounded on one side by the Gulf and on the other side by some other water. If that is good reasoning it would seem to me that you will never get an appraiser to appraise the property unless you had one that had appraised some island. Motion denied."

■ Since we think the trial judge was not in error as a matter of law, his decision on the expert's qualifications is conclusive.

[3, 4] Where private property is taken for public use and at the time and place of

---

most adaptable for high class resort developments, such for instance, as on Miami Beach; and this property is more similar to the Miami Beach area than any other single piece of property in the State of Florida.'

"12. The Court below erred in refusing to allow the defendant, Harry H. Wells, to answer the following question:

" 'Q. Will you state what in your opinion the fair market value of that property—Tracts 12, and others of Wells' property—was on May 8, 1941?'

"13. The Court below erred in refusing to allow the witness Brown Whatley to answer the question:

" 'Q. Now, Mr. Whatley, as an experienced realtor, I will ask you to state whether or not this property (St. Joe Paper Company property) was suitable for development purposes?'

"14. The Court below erred in refusing to allow the witness, Brown Whatley, to testify as to values and appraisements of property west of Panama City, which property was shown to be comparable in type, character and potential uses to the property of defendants.

"15. The Court below erred in refusing defendants' proffer of the testimony of their witnesses, Ed Ball and Harry H. Wells, owners of the larger tracts, to show that on or prior to May 8, 1941, said owners had received bona fide offers from responsible purchasers of their respective lands."

3 Stilwell & Bierce Mfg. Co. v. Phelps, 130 U.S. 520, 9 S.Ct. 601, 32 L.Ed. 1035; Gila Valley, Globe & Northern R. Co. v. Lyon, 203 U.S. 465, 27 S.Ct. 145, 51 L. Ed. 276; Mutual Life Ins. Co. of New York v. Treadwell, 5 Cir., 79 F.2d 487; Davidson v. Commissioner of Internal Revenue, 5 Cir., 91 F.2d 516.

taking there is a market price brought about by a general buying and selling of the kind of property in question, then that market price is just compensation. United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014. "Where, for any reason, property has no market, resort must be had to other data to ascertain its value."[4] In a recent case, Cameron Development Co., Inc., v. United States, 5 Cir., 145 F.2d 209, 210, we said:

"In determining this value, the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future, is to be considered * * *."

The Cameron Development Co. case followed Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 708, 78 L.Ed. 1236, where the court said:

" * * * The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered * * * to the full extent that the prospect of demand for such use affects the market value while the property is privately held. * * * And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. * * *"

■ In the Cameron Development Co. case we pointed out that before the owner of the condemned land could show adaptability to a use he must show a market existed or was reasonably likely to exist in the near future.[5]

Appellants attempted to question their witnesses concerning the most profitable future use for their lands and concerning their possible development as a high class resort, residential, or business community. The district court ruled appellants had laid no proper foundation for the answers to these questions because they had not shown that a demand would exist in the future for these lands or others similarly situated. Appellants tendered no evidence to show either a present or future demand. Witnesses for the Government testified that the market for similar lands in the vicinity was stagnant and the "particular peninsula [upon which Tyndall Field was located] just hadn't panned out."

While an owner of land in Florida by an investment of sufficient capital may develop almost any land for resort, residential, or business purposes, the subsequent demand for the development will determine the success or failure of that investment.

Appellants argue: that as one link in their chain of proof they could show adaptability for resort and residential purposes and then later, as the connecting link to value, they could introduce the evidence on present or future demand; that the trial court should not have tried to control the order of the introduction of their evidence; and that an offer of evidence on market conditions would face the objection that as a foundation the appellants must first show the adaptability of the property for resort, residential, or business purposes.

Appellants' argument has a major fallacy: When they asked questions concerning adaptability for resort and residential business purposes, they never made an offer to prove to the satisfaction of the court the present or future demand, the connecting link from adaptability to value.

■ 4 C.J.S., Appeal and Error, § 291 (b), page 580, states the rule, to-wit:

"As a general rule, in order to preserve for review an objection to the exclusion of evidence, a proper question must be asked, and, on objection thereto, a proper offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all the facts necessary to establish its admissibility. * * *"

---

4 United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55.

5 In so holding we followed the cases ■ of United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, and United States v. Rayno, 1 Cir., 136 F.2d 376.

■ The rules of evidence in the courts of Florida, the locality of the land, and not the Federal Rules of Civil Procedure govern condemnation proceedings in the court below.[6]

■ In Ittleson v. Browning, 99 Fla. 1195, 128 So. 639, the Supreme Court of Florida stated the Florida rule, in a syllabus written by the court, as follows:

"The mere fact that proffered evidence is not full and complete within itself, but forms only one link in the chain, so that it would have to be supplemented by other evidence in order to avail the party offering it, may not render such evidence incompetent or inadmissible; *but*, for such evidence to be admissible, it should be made clearly to appear to the trial court that the evidence, so offered, does form a link in the chain. [Emphasis ours.]

\*     \*     \*     \*     \*

"Where the relevancy or the materiality of· papers offered in evidence did not appear at the time they were offered, and there was no offer or promise to connect them with other evidence, an assignment of error based on the ruling of the court in refusing to permit them to be read in evidence is not well taken."

In Kline v. Blackwell, 5 Cir., 63 F.2d 897, 899, this court in a Florida case referring to exclusion of answers to quoted questions, said:

"The effort was in many instances to bring out independent facts which under Florida practice would make the witness become the examiner's, with no statement of what the witness would say or must have said to speak truly. Without such information plainly given at the time the trial court cannot tell how to rule unless the question very clearly indicates its answer, nor can an appellate court tell whether the suppression of the question was really prejudicial. Should a new trial be ordered to have such questions answered, it might result only in finding out that the witness knew nothing about the matter or would testify the reverse of what the question indicated. Hence the wise rule that reversal will not generally result from the suppression of a question unless its answer appears or direct information is then given of the answer expected. \*  \*  \*"

■ Therefore, under the applicable law, that of Florida, unless appellants showed the future market for the property to the satisfaction of the court, exclusion of testimony as to the adaptability for resort and residential purposes was not reversible error.

■ Just compensation is the value of the property taken. The purposes for which appellants bought their land in the middle twenties and for which they held their land were irrelevant to the question of just compensation.[7]

■ Bona fide offers made to the owners by prospective purchasers are, likewise, irrelevant to show just compensation. The court in Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 115, 48 L.Ed. 211, makes the reason clear:

"It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might, in the end, prove profitable. There is no opportunity to cross-examine the person making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy, and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings."

As we find no reversible error in the ·cord, the judgments appealed from are ·ffirmed.

WALLER, Circuit Judge (dissenting).

In view of the constitutional command that just compensation shall be made for private property taken for public use, and

---

[6] Federal Rules of Civil Procedure, rule 81(a) (7), 28 U.S.C.A. following section 723c; 40 U.S.C.A. §§ 257, 258.

[7] United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

in view of the absence of any recent and comparable sales from which the fair market value of the lands in question could readily be ascertained, I feel that the defendants should have been allowed a wider range in presenting evidence that tended to show factors reasonably pertinent to the ascertainment of fair value.

I believe that the requirements of the strict rules of evidence should be relaxed whenever a rigid adherence to them would .convert the inquiry into a highly technical proceeding, dependent for its outcome upon the skill and knowledge of such rules by the landowner's counsel, rather than upon a just ascertainment of the measure of the landowner's compensation.

I would prefer to see the case re-tried in the light of these views.