ALLEN, Collector of Internal Revenue, v. FIRST NAT. BANK OF ATLANTA.

No. 12194.

Circuit Court of Appeals.

Fifth Circuit.

July 12, 1948.

Homer R. Miller and George A. Stinson, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellant.

Robt. B. Troutman, of Atlanta, Ga., and H. D. Russell, of Macon, Ga., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for the recovery of estate taxes plaintiff had paid. The claim was that the taxes had been overpaid (1) because of the commissioner's refusal to allow plaintiff to deduct the value of prop-

erty bequeathed in trust for charitable purposes,[1] and (2) because of his over-valuation of stock in two corporations, Whitehead Holding Company and Copaco, Inc.

The defense as to the disallowance of the charitable bequest was that the trust was created for both a charitable and a private purpose,[2] and the beneficial interest in favor of the former was not "presently ascertainable and hence severable from the interest in favor of the private use,"[3] in that the bequest to charity was a conditional one, and it could not be said that the birth to the widow of a posthumous child by which the bequest would be defeated "appeared to have been highly improbable at the time of decedent's death."

The defense as to the stock was a denial that it had been overvalued.

Tried to a jury, three questions were submitted for their verdict:

1. What was the fair market value, per share, of Whitehead Holding Company stock on November 2, 1941?

2. What was the fair market value, per share, of Copaco, Inc., on November 2, 1941?

3. Was Emma Whitehead (now Mrs.

---

[1] "Net Estate.

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate— * * *

"(d) Transfers for public, charitable, and religious uses. The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return), to or for the use of the United States, * * * or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual. * * *." 26 U.S.C.A. Int.Rev.Code, § 812.

[2] The will, after making certain bequests, in Item VI devised the residue of the estate to plaintiff, the First National Bank of Atlanta, in trust, directed the trustee to divide the residue into two equal shares to be known as Share No. 1 and Share No. 2, and made provision in Item VIII for Share No. 2. It is Share No. 2 with which this controversy is concerned. Item VIII, dealing with it, provides:

"I direct my said Trustee to pay over the incomes from Share Number Two in quarterly installments, or oftener in its discretion, to my wife, Emma Garn Whitehead, during the term of her natural life, with remainder, absolutely and in fee simple, to any child or children of ours, or any descendant or descendants thereof who may survive her. If a living posthumous child should be born to my wife after my death, the birth of such a child shall not revoke this item of my will, nor any part thereof, but such posthumous child shall be entitled to the same share of my estate that he or she would have received if born prior to my death. Should no child be born to my wife, and should no posthumous child be born, then and in that event, I give, bequeath and devise, absolutely and in fee simple, upon the death of my wife, Share Number Two of my estate to Lettie Pate Whitehead Foundation, a corporation to be organized and managed as hereinafter provided."

[3] Treasury Regulation 105, promulgated under the Internal Revenue Code, provides, in Sec. 81.44 Transfers for Public, Charitable, and Religious Uses:

" * * * If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use."

And in Section 81.46, Conditional bequests:

"If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable. * * *"

Bacon), wife of Conkey P. Whitehead, pregnant at the time of the death of Conkey P. Whitehead?

The jury answered Question No. 1, $48,865 per share; and

Question No. 2, $3,450 per share.

Upon the third question both plaintiff and defendant moved for a directed verdict on the charitable issue. The court taking plaintiff's view that it should have a verdict on that issue, instructed the jury to answer, and it did answer, the third question "No."

Thereafter a judgment reciting "The jury having found and returned a verdict on the issues submitted to the jury, as appears of record, and the Court having found, and hereby finding, that plaintiff is entitled to recover from defendant the sum of $2,320,615.03 * * * with interest," judgment was entered for plaintiff accordingly.

Appealing from the judgment, the collector attacks the part of it which allows the charitable deduction on the ground that the provision in Item VIII, "If a living posthumous child should be born to my wife after my death," imposed a condition which under the evidence required its disallowance.

This objection takes two forms. One is that as matter of law the provision of the will made the bequest unallowable. The other is that, if not, the evidence was not, as the district judge thought it was, sufficient as matter of law to establish within the language of the regulation that the happening of the event by which the bequest would be defeated "appeared to have been highly improbable at the time of decedent's death."

For the reversal of the judgment on the issue of valuation, appellant puts forward three grounds. The first deals with the court's action in staying the taking of the deposition of defendant's witness Pratt on value. The second, dealing with the testimony of Hughes Spalding, takes two forms: (a) The claim that it was error not to strike for want of qualification Spalding's testimony; another (b) the claim that, because of a volunteered opinion by Spalding, its motion should have been granted. The third dealing with requested instructions, claims error in refusing six of them.

Taking up first these claims of error on the valuation issue, we think it clear that on the plainest principle, no reversable error in respect thereto is shown.

We may assume, though appellee vigorously disputes that this is so, that the evidence of Pratt was admissible, and we may assume, too, though this also is denied, that though cumulative in its nature, it would have been of real value to the defendant. But these assumptions would not avail appellant. For the circumstances the record discloses: the shortness of the time before the cause was to come to trial; the prior continuance at defendant's request; the great distance of the place of taking from the place of trial and the residence of the plaintiff; leave in no doubt that in making the order, the court used, it did not abuse, the discretion conferred on it by Rule 30(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The points made on Spalding's testimony are no better taken. Indeed, in the light of settled law, they appear frivolous. The competency of a witness to give his opinion as to value is for the trial court. The extent of his knowledge of the subject matter goes to the weight rather than to the admissibility of, his testimony.[4] This is especially true in the Federal Court where whether a witness is qualified is addressed to the sound discretion of the court.[5] Besides, it is quite evident that Spalding's acquaintance with the matters testified to was ample to qualify him. Nor was it error to refuse defendant's motion for a mistrial because of Spalding's statement "Well, it was decidedly downward and my opinion was that when the war struck it would nose dive,

---

[4] 20 Am. Jur., Evidence, Sec. 891.

[5] 20 Am. Jur., Evidence, Sec. 891; Montana R. Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; St. Joe Paper Co. v. United States, 5 Cir., 155 F.2d 93, 96; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884.

and it did." It would have been error to grant it. On defendant's motion that he do so, the district judge carefully instructed the jury not to consider the remark, and if it was error and any harm was done by it, which, in the state of the record, with the mass of testimony about the war coming in from other sources and unobjected to, seems highly improbable, the error was certainly cured by prompt and affirmative court direction.[6]

When we come to the refusal of the instructions asked by defendant to determine whether there was reversible error, in refusing them it must be kept in mind that the requests may not be considered as abstractions. They must be considered in the light of the whole record, including the general charge to which no exception was taken, and in the light of the statute governing hearings on appeal.[7]

"We do not reverse cases for insubstantial error. Abstract inerrancy is hardly possible in the trial of a case in the federal court; it is never an essential to a valid trial there. Jennings v. United States, 5 Cir., 73 F.2d 470; Community Natural Gas Co. v. Henley, 5 Cir., 54 F.2d 59. Too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made momentous merely by making record of them." Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30, at page 33.

When defendant's requested instruction No. 14[8] is considered in the light of these views, it is at once seen that if it be conceded that as a general abstraction the requested instruction was not erroneous, it certainly was fully covered by the general charge. There it was made plain that isolated sales were not conclusive but were only to be considered as a part of the whole evidence and given such weight as the jury felt them entitled to.

The same is true of request No. 15.[9] In his general charge the judge declared: "Fair market value is the price that would be agreed upon between a willing seller and a willing purchaser, neither acting under compulsion and each being advised of the facts." Over and over again he advised the jury that they must keep that definition in mind in making up their verdict. Whenever, too, in the charge reference was made to actual sales, it was with a repetition of the caution that these sales must come within the definition and that no actual sale would be conclusive but would be only a factor to be considered by the jury.

Requested instruction No. 17 was properly refused. To the extent that it undertook to state a rule of law for the jury's guidance, it was erroneous. Cf. Page v. Howell, 5 Cir., 116 F.2d 158. In addition it was a mere general abstraction without clear meaning or any proper application to the case.

Instructions No. 26 and 29, which dealt with sales made for reasons other than to obtain full and fair value,[10] including sales not made at arms length, insofar as they were correct were sufficiently covered in the main charge. Certainly it is not made to appear either in the record or on the brief, sufficiently to cause re-

---

[6] Woods v. Gettelfinger, 5 Cir., 108 F. 2d 549; Acme Freight Lines v. Blackmon, 5 Cir., 131 F.2d 62.

[7] " * * * On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." 28 U.S.C.A. § 391.

[8] "You are instructed that fair market value is not determinable by any isolated sales but such sales are only determinative where they exist in such number as to establish an open market for the prop-

erty and the existence of a willing seller and buyer."

[9] "Forced sales of property such as those made by receivers or executors to pay debts are not considered conclusive and should be accepted only if under all the evidence the jury is satisfied they are made for the full fair market value of the property."

[10] No. 26 was an instruction that a sale made at less than fair market value because of the seller's preference for the purchaser proved nothing as to value. No. 29 was in effect that sales between business friends and associates which are not arm length transactions are not determinative of value.

versal, that the failure to give them affected the substantial rights of the defendant.

■ Request No. 33, the last of which complaint is made, undertakes to state the various factors which could be considered in determining the value of the stock of the corporation in question. Except as it uses the term "replacement cost of stock in such companies", it merely gathers up and repeats the elements of value which the district judge had already given fully in his charge. As to this element, "the replacement cost" of the stock, the court below correctly ruling that there was no issue, made on it and no evidence about it, properly declined to give it.

We thus come to the issue of the charitable deduction and the question of substance it presents, whether on the record plaintiff was entitled to the judgment it got on it. The case was tried more than nine months after the death of the testator. There was the undisputed evidence of Mrs. Bacon, Whitehead's widow, that she and Mr. Whitehead had been living together as man and wife for six years; that no children were born to them during his lifetime; that he had been sick for two years before his death; and that she was not, and knew she was not, pregnant when Mr. Whitehead died. In addition to this evidence, the court, over defendant's objection that it was going into subsequent events happening after the death of the decedent, admitted the testimony of Mrs. Whitehead that she and Whitehead had had no children born to them after his death. He did this on the view that Mrs. Whitehead's pregnancy or non-pregnancy was an established fact at Whitehead's death and not in any sense a contingency and that it was, therefore, susceptible of proof by any testimony tending to establish the fact whether the testimony was available at his death or only later.

The record thus establishing undisputedly that there was no possibility that a child could have been born to Mrs. Whitehead after Whitehead's death, the court, under the settled law that the actual condition of a woman as to child bearing is the subject of inquiry and proof,[11] instructed a verdict for plaintiff on the charitable issue.

Appellant is here urging upon us: that the true issue for determination by the jury was not the fact of Mrs. Whitehead's non-pregnancy at the time of Whitehead's death but whether that fact was manifest to, and known at that time by, those who, within the time fixed by the law, were to value the property devised to the charity; that Mrs. Whitehead's evidence that she was not, and knew she was not, pregnant was incompetent on that issue; and that, therefore, on the charitable issue, a verdict should have been instructed for him. In the alternative, he insists that if Mrs. Whitehead's evidence as to her knowledge was admissible, it was not conclusive on the issue and at best for plaintiff, there was an issue of fact for the jury.

We cannot agree. It is certainly true that it has been many times held, that in the case of a conditional bequest defeasible upon the happening of a contingency, that is of a future event whose happening has not already been determined and, therefore, may or may not come to pass, the fact that it has happened cannot be taken into account in determining whether its happening "appeared highly improbable at the time of decedent's death". But these cases have all dealt with true contingencies, that is with things not already predetermined at the time of, and which, therefore, might or might not happen after, death. None of the cases appellant cites dealt with a situation like this where the inquiry is not as to what would likely happen in the future but as to what had already happened, that is whether at the death of the testator conception had taken place. No case has been cited to us, none has been found, which held that, because it was not in hand at the time of death, resort may not be had to evidence which establishes the existence at death of a state of facts which then determined that there could not be a posthumous child.[12]

[11] United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793.

[12] Cf. Halliday v. United States, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. 711; United States v. Clapp, 2 Cir., 63 F.2d 793; Eggen v. United States, 8 Cir., 58 F.2d 616; Walker v. United States, 5 Cir., 130 F.2d 587.

The reason that the evidence of later occurring events was inadmissible in the cases appellant relies on and is admissible here may be very simply stated. In the case of a real contingency, the happening of an event not already predetermined, the proof of what happens later throws no light on conditions existing at the date of testator's death. Here the evidence of non-birth convincingly proves a fact then existing, whether or not known, that there would not, and could not, be any child born of the marriage. It must be kept in mind in considering this case and the thousands like it, where property is left to a wife for life with remainder to children of testator and his wife, and in default of such children to a charity, nothing by way of condition is added to or taken from the will by the specific mention of a posthumous child. The will here in question was made more than three years before testator's death and was not changed. The mention in it of a posthumous child was made not to impose an additional condition, but to comply with the Georgia decisions under Georgia Code,[13] that unless provided for in it, the birth of a posthumous child revokes a will.

If, then, the government is correct in its position that it is not the fact existing at the time of the death, but only what is then known to the valuers of the property devised as to the fact, which determines whether a charitable bequest is deductible, then in no case of a bequest to a wife for life with remainder to a charity, can the deduction for charity be taken, for the birth of a posthumous child, whether or not mentioned in the will, would defeat the deduction and, under the government's theory, the mere possibility of its birth would operate to defeat the deduction. No case has been cited to us, we have found none, where such a claim has been

made. We do not believe that such a claim can be fairly made under the statute and the regulations. Indeed, the very purpose and structure of the statute and the regulations negative this view. The statute providing for the deduction makes no such limitation.[14] Neither can any be found in Sec. 811 for optional valuation. This section authorizing the executor to value the estate as of one year from death, does declare that the valuation for the purpose of the charitable deduction "shall be as of the date of decedent's death with adjustment for any difference in value (not due to mere lapse of time or the occurrence or non-occurrence of a contingency) of the property as of the date one year after decedent's death."

But nothing here stated lends color or sanction to the view that the value fixed one year after decedent's death as of the date of the death shall be fixed by excluding from consideration any of the evidence then in hand which proves or tends to prove the real facts existing at the date of death.

Neither is there anything in the regulations to support the harsh, the rigid, the unsound view here contended for, that a valuation determined upon one year after decedent's death as of the date of his death must exclude from consideration the real facts then known as to conditions actually existing at death, and the property must be valued as though things known were unknown because forsooth they were unknown at the time of death.

If the cases on which appellant relies, dealing with conditional bequests, are read in the light of their facts, there is nothing in them which supports this view. This is particularly true of Ithaca Trust Co. v. United States, 279 U.S. 151, 153, 49 S.Ct. 291, 73 L.Ed. 647, the authority on which appellant most relies for his claim that

[13] Georgia Code, 1933, § 113-408. In all cases the marriage of the testator or the birth of a child to him subsequent to the making of a will in which no provision is made in contemplation of the event shall be a revocation of the will. Hart v. Hart, 70 Ga. 764.

[14] "(d) Transfers for public, charitable, and religious uses. The amount of all bequests, legacies, devises, or transfers,

to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *." Sec. 812, I. R. C., 26 U.S.C.A. Int.Rev.Code, § 812(d).

proof may not be made of the non-birth of a child to Mrs. Whitehead. There the court did not hold that proof of later events which established the existence at the time of death of a fact material to the inquiry could not be inquired into. What was held was: that the fortuitous event, the happening of the widow's death within six months after the death of the testator, could not affect the value at testator's death of the charitable bequest; that that value must be determined by mortality tables showing the probabilities (as to her death) as they stood on the day when the testator died. There was no discussion or decision there of the point made here, that it is not the existence at time of death of the fact but knowledge at that time of its existence that is important. There was merely a holding that conditions happening to come to pass after the testator's death could not be used to determine the value under the conditions in fact existing at the date of death. None of the cases which have followed in the train of that case have held differently or dealt with a different situation. None of them have either decided or discussed a situation like the case at bar.

It is true that in United States v. Provident Trust Co., 291 U.S. at page 281, 54 S.Ct. at page 390, 78 L.Ed. 793, the court did say:

"Article 53, Treasury Regulations 37, declares that the amount of the deduction in such case is the value at the date of decedent's death of the remainder interest in the money or property which is devised or bequeathed to charity. Compare Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. It follows that, in making a decision for that interest, the value thereof must be determined from data available at the time of the death of decedent. Compare Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 72 L.Ed. 667."

but this analysis of the regulation and of the decisions referred to but confirms the view we take. For the court then goes on to hold, not that the data available at the time of the death of the decedent must have been known either to decedent or his beneficiaries, but that it was perfectly competent to bring proof to show the existence not of knowledge of the fact in anybody's mind but of the fact itself, and the opinion concludes:

"We have for consideration simply a statutory provision exempting from a prescribed tax the value of all bequests, etc., made to or for the use of charitable organizations and those which are akin, plainly evincing a legislative policy to encourage such bequests. Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564. And, in that view, we well may assume that Congress could not have meant to leave its aim to be diverted by a purely arbitrary presumption, which, whether applicable or not to sustain another or different policy, would deny the truth and subvert the policy of this particular legislation."

We think with appellee that appellant confuses the existence of a given state of facts with the evidence necessary to prove that such a state of facts exists. We agree that in order to support the claim for deduction it must be shown that under the facts found to exist at the date of death the defeasance of the charity is highly improbable. We do not agree that the evidence must all be in hand at the date of death. Supposing a will left a bequest to "A" if he survives the testator but if not to charity. Suppose "A" was in fact dead at the death of the testator but it took the executor six months to trace him and obtain the evidence that he was dead. Could it be said that the deduction for charity would be disallowed because evidence of death of "A" was not available to executor at the moment of death.

We think appellant's argument that the deduction does not depend upon the real facts existing at death but upon what was then known about them goes counter to common sense and common reason and certainly finds no support in either statute or regulations. Long before the estate tax return was due, and, in this case long before the year for valuing the estate under the option had expired, conclusive evidence of the fact of non-pregnancy on the date of death and, therefore, of the impossibility

on that date of the future birth of a child was available to the valuers. To hold that the valuers could not take into account this indisputable proof, that on the date of death it was an established fact that the charity could not be defeated by a later birth, indeed must shut their eyes to it, would accord with neither common sense nor sound policy. Indeed, it would be to go directly contrary to the established policy of Congress to encourage gifts to charity and the statutes and regulations governing the allowance of such deductions.

The district judge was right in refusing to be misled. His judgment is affirmed.